Hawkins, J.,
delivered the opinion of the Court.
David Young et al. filed their petition in the County Court of Wilson County, against Milton A. Underwoood et al., praying for the sale of four slaves, for purposes of distribution among the parties, as the distributees of William Petway, deceased; and at the March Term, 1859, of said Court, a decree was pronounced in said cause, directing the Clerk of said Court, to sell said slaves to. the highest bidder, on a credit of twelve months, taking from the purchaser notes with securities for the payment of the purchase money, except the sum of #100, which was required to be paid in cash; and to make report thereof.
The Clerk, as appears from his report, made to the May Term, 1859, of said Court, proceeded to sell said slaves, on the 16th day of April, 1859, at which sale the defendant, R. E. Thompson, became the purchaser of one of the slaves, Amanda, at the price of $1,300, of which he paid $30 at the time of the purchase, and executed his notes with Z. Tolliver *598 as bis security, for tbe payment of the balance, due twelve months after date, and payable to the Clerk. •
No other steps appear to have been taken in the cause, until the January, Term of said Court, in 1865, when it came up further to be heard upon said report, which being unexcepted to, was, “in all things confirmed,” and it was ordered that the cause be retained until the further order of the Court.
At the following July Term, Thompson filed his ex parte petition, alleging the sale and purchase, the execution of his note, and the confirmation of the report of the sales; that no other steps have been taken in the cause, and that his note remains unpaid. The petitioner further states there' has been no decree rendered in the cause, divesting the title to said slave out of the heirs of Petway, or vesting thá same in him, and asks the Court to set aside said .sale, and to discharge him from all liability on his note, for the payment of the purchase money, upon the ground, that, by an amendment to the Constitution of the State, adopted on the 22d day of February, 1865, slavery or involuntary servitude, was abolished, and all slaves emancipated, and consequently, the Court could not, by decree, vest any title to said slave in him.
At the following September Term of said Court, sail cause came on to be heard upon said petition, when it was ordered and decreed that said sale be set aside, and that petitioner’s note be canceled and delivered up; from which an appeal was prosecuted to *599 the next term of the Circuit Court for Wilson County.
Afterwards, and at the November Term, 1865, of .said County Court, a motion was made for judgment against all the purchasers at said sale, and their securities, on their notes for the purchase money, when the Court, after rendering judgment against the several purchasers of the other slaves, overruled the motion against Thompson and his security, upon the ground that, at the preceding September Term, a decree had been pronounced in the cause, releasing Thompson from the payment of his note; from which action of the Court, in overruling said motion, an appeal is prosecuted to this Court. At the September Term, 1865, of the Circuit Court for Wilson County, the appeal prosecuted in that Court, from the order of the County Court, releasing Thompson from his purchase, was dismissed; from which an appeal is prosecuted to this Court, and both causes are, by consent, heard together.
The first question presented for our consideration, is, did the County Court have jurisdiction to grant the relief sought by Thompson, the purchaser? Upon this branch of the case, we apprehend, there can now be but little difficulty, if former adjudications of this Court upon this point, are to be regarded as authority. In the case of Young vs. Shumate, 3 Sneed, 369, Young filed his petition in the County Court of Davidson County, seeking to be discharged from his pur-, chase of a slave, made under a decree of said Court, and to have the obligation, given by him for the *600 payment of the ptirchase money, delivered up to him, upon the ground of the unsoundness of the slave, and the consequent failure of the consideration, and alleging that he was defrauded in the sale. In this Court, it was argued, “in addition to the ground stated in the petition, that, in consequence of irregularities in the proceedings, the sale of the slave was void, and communicated no title to the purchaser” ' But this Court declined to consider the case, upon either of the grounds assumed in the argument, saying, “if the positions were admitted to' he sustained by the record, we feel very clear, that, upon a diiferent ground, the petition must be dismissed, and that is the entire want of jurisdiction in the County Court, to grant any redress in the case stated in the petition.” But it is now insisted, in an elaborate and able argument, that, by sections 4204 and 4205, of the Code, the Legislature intended to confer upon the Court an enlarged jurisdiction upon this subject, and to give it the power to grant relief in such cases, and to hear petitions, set aside sales, etc., at any time whilst the cause remains in Court, for any purpose. We admit the plausibility of the argument. But, in the case of Bond vs. Clay et als., 2 Head, this question came directly before this Court, when it was held, that these sections are merely declaratory of the law, as it previously existed in regard to the jurisdiction of the County Court, upon the subject, without vesting in that tribunal any new or more extended power or authority; and the assumption, that, by the provisions of the sections before referred to, a new or en- *601 Urged jurisdiction was intended to be conferred upon the County Courts, was wholly, unfounded. Upon a careful examination of the question, we are satisfied with the ruling of the Court in that case; hut were its correctness even doubtful, we would feel constrained to recognize it as an authoritative settlement of the question. But it is insisted, the case of Young vs. Shumate, and Bond vs. Olay, are not authorities in this case; because, in the former cases, the reports of the sales had not only been pronounced, vesting title in the purchasers. But we think that can make no difference.
Before the confirmation of the report of sale, the sale is incomplete, and the County Court possesses the incidental power of setting it aside; hut the confirmation of the report of the sale, the purchaser having complied with the terms, not only completes the sale, but, at least, in cases of the sale of personalty, when no lien is retained, vests in the purchaser a good and valid title to the property. We understand this to he the well settled doctrine upon this subject, as has been fully recognized by this Court at the present term, in the case of Card and Wife vs. Bonner. And if the confirmation of the report not only complete the sale, but also vests in the purchaser a title to the property, as effectually as a decree, upon its face and in express terms, directing and vesting title, we are unable to see any reason for the application of' a different rule.
We are, therefore, of the opinion, that, after the confirmation of the report of the sale of the slave *602 to the petitioner, Thompson, the County Court had no jurisdiction to set aside the sale, or to order that th$ note given for the purchase money be delivered up, or cancelled, or, in any manner, that the purchaser be discharged from his obligations. It, therefore, follows, that the order to that effect, made at the September Term, 1865, of the County Court, was a mere nullity, and cannot, in any manner, prejudice the rights of the parties.
It is also insisted, and, we think, correctly, that, in this class of cases, an appeal does not lie to the Circuit Court, from the order of judgment of the County Court.
Section 3147 of the Code, provides, that “any person dissatisfied with the sentence, judgment, or decree of the County Court, may pray an appeal to the Circuit Court of the County, unless it is otherwise expressly provided by this Code.”
This, we think, is done in the following section, which provides that, “in all cases in which the jurisdiction of the County Court is concurrent with the Circuit or Chancery Court, or in which both parties consent, the appeal lies direct to the Supreme . Court.” These sections expressly give the right of appeal, and the latter section expressly declares, that the appeal lies direct to the Supreme Court. In this case, all the jurisdiction possessed by the County Court, is concurrent with that of the Circuit and Chancery Courts, and, therefore, the appeal lies directly to the Supreme Court, and not to the Circuit Court; but in this case, it can make but little difference to the parties, inas *603 much, as has been already shown, the order from which the appeal was taken to the Circuit Court, was void, for want of jurisdiction in the County Court.
We do not think the petitioner is entitled to any relief upon the state of facts, as stated in his petition. The sale had been confirmed, and, thereby, the title to the slave became vested in him, and he became the owner thereof, without any further order or decree of the Court; and, consequently, the loss occasioned by the subsequent emancipation of the slave, by an amendment to the Constitution of the State, or that which may now seem to be a loss, must fall upon him. The County Court ought, upon motion, to have rendered a judgment against the purchaser of the slave, for the unpaid purchase money; and this Court will proceed to render such judgment as the County Court ought to have rendered. The petitioner will pay the costs of the appeal from the County Court to this Court, and the appellant will pay the costs in the case of the appeal to the Circuit Court.